UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
KHALID ELFOULKI and KETEVAN
CHICHINADZE, on behalf of themselves and all
other similarly situated,

                       Plaintiffs,                      14-cv-5964 (PKC)

         -against-                    MEMORANDUM
                                                            AND ORDER

BRANNONS SANDWICH SHOP, LLC,
ANEMACORE, LLC, RONALD BRANNON,
and DONATELLA ARPAIA,

                       Defendants.
-------------------------------------------------------------x

CASTEL, U.S.D.J.

          The present motion for sanctions relates solely to plaintiffs' claims against defendants Brannons Sandwich Shop, LLC ("BSS") and Ronald Brannon.[1] Defendants BSS and Brannon assert that there never was a good faith basis to believe that plaintiffs Khalid Elfoulki and Ketevan Chichinadze satisfied the "enterprise coverage" or "individual coverage" element of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §203(s)(1)(A). BSS and Brannon further assert that, on September 21, 2015, they made a proper demand for withdrawal of the claims under the "safe harbor" provision of Rule 11, Fed. R. Civ. P., but plaintiffs did not consent to dismissal of their claims until December 16, 2015, after defendants had expended additional attorneys' fees defending the claims. For reasons that will be explained, BSS and Brannon (insofar as he is sued in relation to his ownership and control of BSS) may recover their

---

[1] Sanctions are sought under Rule 11, Fed. R. Civ. P., 28 U.S.C. § 1927 and the inherent power of the Court.

attorneys' fees and expenses for the period from October 13, the expiration of the 21-safe harbor period, through December 16.[2]

BACKGROUND.

Plaintiffs commenced this action on July 30, 2014 on behalf of themselves and others similarly situated, alleging, among other things, that defendants BSS, Brannon, Anemacore, LLC, doing business as "Donatella's," and Donatella Arpaia violated the minimum wage provisions of the FLSA, 29 U.S.C. § 206(a).

In their complaint, plaintiffs alleged that Brannon was the owner and sole decision maker in charge of BSS. (Compl. 13.) Plaintiffs further alleged that defendants were "employers" within the meaning of the FLSA, that defendants' qualifying annual business revenue exceeded $500,000, and that defendants were engaged in interstate commerce within the meaning of the FLSA. (Compl. 15.)

The FLSA defines an "[e]nterprise engaged in commerce or in the production of goods for commerce" as:

> an enterprise that - (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated); . . .

29 U.S.C. §203(s)(1)(A).

The FLSA also covers an employee if the employee was "engaged in commerce or in the production of goods for commerce. . . ." 29 U.S.C. §206(a). Plaintiffs alleged that "they

---

[2] October 12, 2015 was the 21st day but was a legal holiday and hence the "safe harbor" period expired the next day. Rule 6(a)(1), Fed. R. Civ. P. December 16 is the date of plaintiffs' letter to this Court announcing the withdrawal of the claim.

all handle goods that have been and continue to be moved in interstate commerce." (Compl. 15.) However, the fact that employees handle goods that have moved in interstate commerce does not satisfy the FLSA's "individual coverage" element. See Shim v. Millennium Grp., 2009 WL 211367, at *2 (E.D.N.Y. Jan. 28, 2009) ("Individual coverage does not apply, as plaintiffs do not allege that they were *personally* 'performing work involving or related to the movement of persons or things . . . between states.'"). In opposition to the present motion, plaintiffs' counsel does not rely upon the FLSA's "individual coverage" to justify plaintiffs' actions.

In its answer filed November 3, 2014, BSS asserted that its annual gross revenue was less than $500,000. (Dkt. 21, p. 14.) And, in their attorney's declaration, defendants asserted that they produced documents demonstrating that BSS never did more than $500,000 in business. (Declaration of Jesse C. Rose ("Rose Decl.") ¶ 7.) Defendants now assert that BSS was open for ten months and that its gross revenue never exceeded $159,290. (Def. Reply Memo. at 2.) On June 2, 2015, counsel for BSS and Brannon wrote to plaintiffs' counsel inquiring whether they would consent to dismissal based upon the documents produced to date.

As noted, on September 21, 2015, BSS and Brannon invoked Rule 11's "safe harbor." In accordance with Rule 11, BSS and Brannon served but did not file a notice coupled with a draft of its unfiled motion for sanctions. (Rose Decl. ¶ 14.) The "safe harbor" period expired on October 13, 2015. On December 11, 2015, BSS and Brannon announced, in a pre-motion letter, their intention to move for summary judgment and for sanctions. On December 16, 2015, plaintiffs wrote to the Court to advise as follows: ". . . Plaintiffs now concede that they cannot establish all of the elements of their FLSA claims against the Brannon Defendants. Specifically, Plaintiffs cannot establish that Brannon did $500,000 in business while it was open." (Pl. Ltr., Dec. 16, 2015.)

On December 18, 2015, the Court held a pretrial conference at which plaintiffs acknowledged that there was no basis to proceed under the FLSA against defendants BSS or Brannons. (Dkt. 66). As a result, the Court dismissed with prejudice all FLSA claims against Brannon and BSS and declined to exercise supplemental jurisdiction over the remaining state law claims brought against them. The Court allowed the defendants to proceed with their sanctions motion.

DISCUSSION.

   A. Rule 11:

Needless overuse of Rule 11 or other sanction provisions may have a chilling effect on the filing of meritorious claims. The risk of chilling meritorious claims is significant in the FLSA context where low wage employees may know little about the revenues of their employer. Nevertheless, a lawyer signing the pleading must be able to certify that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . ." Rule 11(b)(3), Fed. R. Civ. P. Rule 11 sanctions should not be imposed "for minor, inconsequential violations of the standards prescribed by subdivision (b)." Rule 11, Fed. R. Civ. P., Advisory Committee notes to the 1993 amendments. "'The standard for triggering the award of fees under Rule 11 is objective unreasonableness,' and is not based on the subjective beliefs of the person making the statement." Storey v. Cello Holdings, LLC, 347 F.3d 370, 387 (2d Cir. 2003) (internal citation omitted) (quoting Margo v. Weiss, 213 F.3d 55, 65 (2d Cir. 2000)).

In a run of the mill FLSA case such as this, how would a plaintiff's lawyer make an "inquiry reasonable under the circumstances" into a would-be defendant's revenues without the benefit of pre-complaint discovery? The $500,000 FLSA enterprise threshold does not concern itself with an employer's profits; it is concerned with "annual gross volume of sales . . . ." 29 U.S.C. §203(s)(1)(A). Perusal of a menu and interviews with the clients may enable a lawyer to make a fact-based estimate of the average price of a meal and the average number of meals served in a given period of time, which would enable a good faith estimation of revenues. Also, the lawyer may obtain information about businesses with strong similarities from court filings in other cases. The Court cannot define the components of a reasonable inquiry in the abstract, but a lawyer might be able to draw reasonable inferences from the number of locations, number of employees, plans for physical expansion, or expenditures for marketing or advertising. The inquiry need not be infallible but it must be objectively reasonable under the circumstances.

In response to the sanctions motion, plaintiffs have endeavored to explain what they knew or believed:

1. <u>The Brannon Defendants and the Donatella Defendants Might Qualify as a Single Enterprise.</u> Plaintiffs suggest that the Brannon defendants and the Donatella defendants may have qualified as a single enterprise. (Pl. Memo. at 12). However, the Complaint alleged something quite different. It alleged that "Defendant Brannon, jointly with Defendant [Donatella] Arpaia, made managerial decisions on behalf of Defendant Donatella's. . . ." (Compl. 13.) The allegation with regard to BSS was notably different: "At all relevant times herein, Defendant Brannon was and is the owner of Defendant BSS. Defendant Brannon solely made all managerial decisions on behalf of BSS, including all matters relating to employees' hours

worked, compensation, and rates and methods of pay . . . ." (Compl. 13.) The allegation itself is inconsistent with any belief that BSS was under common ownership or control with or by Arpaia or Donatella's. The circumstance that at one time—notably, after the filing of the complaint—the Brannon defendants and the Donatella defendants elected to be represented by one law firm does not provide a reasonable basis to assume common control.

        2.      <u>All Defendants had "Signaled" a Willingness to Settle.</u> Plaintiffs note that, after the action was commenced, BSS and Brannon (then represented by different counsel) "signaled" a willingness to settle. (Pl. Memo. at 5.) A party's willingness to settle a claim that lacks a basis in fact is not an admission that the claim has a basis in fact; at times, payment of a nuisance settlement may be the most cost efficient way for a party to proceed. Notably, the action against BSS and Brannon did not settle.

        3.      <u>All Defendants Consented to Notices to Servers and Bartenders.</u> Plaintiffs note that defendants' joint counsel consented to the transmittal of collective action notices to all who were employed by either restaurant. (Pl. Memo. at 6.) A consent to notice has very little, if any, probative value in regards to the adequacy of plaintiffs' pre-complaint investigation. Brannon, unlike defendant Donatella, had asserted in his answer that the enterprise threshold of $500,000 was not satisfied. Although largely beside the point, the Court notes that the Donatella defendants ultimately moved to decertify the collective action and that motion was granted. (Dkt. 86.)

        4.      <u>BSS and Brannon Did Not Send their Rule 11 Letter Until September 21, 2015.</u> Plaintiffs derive comfort from the fact that the Rule 11 "safe harbor" letter was not sent until over a year after the action was filed. (Pl. Memo. at 7-8.) This has implications for the scope of any sanctions award but not for whether some sanction is justified. The implication

plaintiffs would have the Court draw is that a party who waits too long to serve a Rule 11 "safe harbor" notice is tacitly admitting that there is no basis for a sanctions motion. But, such a reading of the rule would encourage litigants to fire off "safe harbor" notices early in a case without a possibly more sensible approach of exploring an inexpensive resolution or curative amendment after a review of documents.

        5.       <u>Plaintiffs Could Not Determine Whether the Threshold Was Met until after the Transcript of Brannon's Deposition Was Examined.</u> Plaintiffs assert that they conducted Ronald Brannon's deposition on the last day of the discovery period, November 30, 2015, and that the attorney conducting the examination reported "that the testimony did not support any volume of cash sales sufficient for Brannons to meet the $500,000 threshold." (Pl. Memo. at 8-9.) The two supervising attorneys asked for the transcript to be "rush order[ed]" and upon review on December 11, 2015 decided to withdraw the claim. (Pl. Memo. at 9.) A vague hope that a deposition might show that there were cash sales not reported in the documentation that would move the defendant over the statutory threshold does not satisfy the Rule 11 standard. As plaintiffs concede and, indeed, urge, it is their pre-complaint investigation that is at issue. If there was a good faith basis for the allegation at the time of filing but ultimately that allegation could not be proven, there would be no basis for sanctions. However, if there was no objectively reasonable inquiry and no good faith basis for the allegation at the time of filing, then a party is not entitled to wait and see whether he or she might get lucky at a deposition and find some support to retroactively bless the pre-complaint inquiry. Any argument that the 21-day "safe harbor" provision is too short and should be lengthened is best addressed to the Advisory Committee on Civil Rules. The existing period appears to strike a careful balance between the

rights of those accused of sanctionable conduct and those who may be needlessly defending a baseless claim.

B.  Other Grounds for Sanctions: Section 1927 and Inherent Powers:

Neither 28 U.S.C. §1927 ("Any attorney . . .who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs. . . .") nor the Court's inherent power to impose sanctions for bad faith conduct, fit the circumstances of this case.  See United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO, 948 F.2d 1338, 1343-46 (2d Cir. 1991).

The Court is aware that sanctions under either of these grounds would enable BSS and Brannon to recover attorneys' fees for the period preceding the "safe harbor" notice.

The conduct at issue was a failure to conduct an objectively reasonable inquiry to support an allegation.  It fits squarely under Rule 11 and nowhere else.  A Rule 11 "safe harbor" notice has the salutary effect of requiring a party to rethink his or her allegation and the adequacy of the pre-complaint investigation.  The intent is to encourage a withdrawal of the offending pleading.  Plaintiffs should have heeded the "safe harbor" notice.

C.  Appropriate Sanction:

A sanction under Rule 11 "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."  Rule 11(c)(4), Fed. R. Civ. P. After the "safe harbor" period expired and before the withdrawal of the claims, the deposition of three plaintiffs and Ronald Brannon were conducted, all on November 30, 2015.  In addition, defendants prepared and filed a comprehensive pre-motion letter explaining the basis for their summary judgment and sanctions motions.  Since defendants' counsel's first appearance on March 30, 2015, they have billed their client a total of $7,500 in fees and $1,141.50 for the

defense of this action on a fixed fee basis for discovery and motions. (Def. Memo. at 6-7.) They state that their client is obligated to pay $2,500 for the present motion. Taking all of the foregoing into account, the Court awards as a sanction payable to BSS and Brannon the sum of $4,000, covering the period between October 13 and December 16 as well as the time spent on this motion. Because the lack of an objectively reasonable inquiry into the factual basis necessary to meet certain statutory elements was that of plaintiffs' counsel, it should be borne by counsel and not the clients.

Absent exceptional circumstances, which do not exist here, sanctions should be imposed jointly and severally upon the signing lawyers and the law firm. Rule 11(c)(1), Fed. R. Civ. P.

CONCLUSION.

The failure here was not a moral shortcoming of the lawyers. Rather, they did not perform an objectively reasonable inquiry of one critical allegation in their complaint. It is nothing more and nothing less than that.

Defendant BSS's motion for sanctions is granted to the extent that sanctions are awarded under Rule 11, jointly and severally against Alexander T. Coleman, Michael J. Borelli and Borrelli & Associates, P.L.L.C. in the amount of $4,000.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
June 22, 2016